UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| VITAL HEALTH CARE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. M-08-142 |
| | § | |
| ADELAIDE HORN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING MOTION TO DISMISS CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

### I.    Introduction

Now before the Court for consideration is the Motion to Dismiss filed by Defendants in their official capacities.  (Doc. 13).  Plaintiff Vital Health Care, Inc. originally brought suit in this Court on May 9, 2008.  (Doc. 1).  Plaintiff's Original Complaint, filed on its own behalf and on behalf of others similarly situated, sought relief against Defendants Adelaide Horn, in her official capacity as Commissioner of the Texas Department of Aging and Disability Services ("DADS"), and Tommy Ford, in his official capacity as the Acting Director of Community Services, an agency within DADS.  *Id.* Defendants moved to dismiss Plaintiff's official capacity claims against them in the Motion to Dismiss filed on June 9, 2008.  (Doc. 13).  One day later, Plaintiff filed an Amended Complaint seeking relief against Defendants in their official *and* individual capacities but otherwise making no substantive changes to Plaintiff's factual allegations or causes of action.  (Doc. 15).  The Court will herein consider Defendants' Motion to Dismiss the official capacity claims against them as set forth in Plaintiff's Amended Complaint, the live complaint in the case.  Defendants appeal to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure for the dismissal of these claims.  (Docs. 13, 30).

## II.     Factual and Procedural Background

### A.     Plaintiff's Factual Allegations and Claims against Defendants in Their Official Capacities

Plaintiff alleges that it is a home care provider participating in Texas's Community Living Assistance and Support Services program ("CLASS") under a direct services contract (hereinafter "contract" or "CLASS contract").  (Doc. 15; Doc. 15, Ex. A).  CLASS provides home and community-based services to individuals as cost-effective alternatives to placement in intermediate care facilities.  (Doc. 15).  Plaintiff's contract authorizes it to provide these services to patients in the "Valley catchment area." (Doc. 15; Doc. 15, Exs. B, C).  DADS, the state agency responsible for administering CLASS, informed Plaintiff in a letter dated October 16, 2007 that it had conducted a review of Plaintiff's contract and had found Plaintiff "to be in compliance in all areas." (Doc. 15; Doc. 15, Ex. B).  Therefore, DADS authorized the extension of the expiration date of the contract to November 30, 2008.  (Doc. 15; Doc. 15, Exs. B, C).

Plaintiff alleges that on December 20, 2007, DADS issued a Request for Proposal for CLASS providers "to expand the program in the Valley Catchment Area and offer freedom of choice to eligible participants in all CLASS catchment areas for the provision of direct services."  Plaintiff claims that it sought clarification from DADS on whether it was required to submit a proposal, given that DADS had recently extended its contract. According to Plaintiff, DADS advised that a proposal was not required.  However, after the time period for submitting proposals had closed, DADS contacted Plaintiff and instructed it to submit a proposal within two weeks.  Plaintiff modified the proposal it had

submitted to DADS on two prior occasions and re-submitted the proposal package.  (Doc. 15).

On March 25, 2008, DADS issued a letter informing Plaintiff that its proposal "did not meet the qualifying score required by DADS for a CLASS contract" and, therefore, Plaintiff's contract was being terminated, effective May 31, 2008.  (Doc. 15; Doc. 15, Ex. D).  The letter also informed Plaintiff that "[a]ll of the CLASS participants currently being served…must be transferred to eligible CLASS providers no later than May 31, 2008."  *Id.*  Furthermore, Plaintiff would "no longer be authorized to bill for any services provided under this contract after May 31, 2008."  *Id.*  Pursuant to provisions in the CLASS Provider Manual and CLASS contract, Plaintiff filed a timely written petition for a hearing on the termination of its contract.  (Doc. 15; Doc. 15, Ex. F).[1] [2]  Plaintiff's petition, dated April 11, 2008, also asked to stay the transfer of its clients pending the

---

[1]  Plaintiff submits that § 8340 of the CLASS Provider Manual provides as follows:

> § 79.1602(a)—A contractor has the right to a hearing on any adverse action as defined in § 79.1601 of this title (relating to Definitions).

> § 49.19(d)—The provider agency has the right to appeal contract termination by filing a written request for a hearing so that DHS receives it within 15 calendar days after the provider agency receives DHS's termination letter.

> (1)   When a contract is involuntarily terminated by DHS, clients may be transferred to another provider, even if appealed.  If appealed, DHS can give clients a choice of returning to the provider agency.
> (2)   If the appeal decision is in favor of the provider agency, the contract remains in effect and DHS resumes referrals.  Clients are given a choice of returning to the provider agency.
> (3)   If DHS upholds the decision to terminate, DHS terminates the contract.

(Doc. 15; Doc. 15, Ex. E).  Plaintiff's pleading and attached documents indicate that DADS is the successor agency to the Texas Department of Human Services ("DHS") "for the programs covered by the [CLASS] contract."  (Doc. 15; Doc. 15, Exs. A, C).
[2]  Section III.E of Plaintiff's CLASS contract states that "[t]he Department agrees…[t]o provide a fair hearing as defined in the Department's regulations, to the Provider Agency in the event the Department suspends payments, suspends or cancels the Provider Agency's contract or assesses an amount due from the Provider Agency."  (Doc. 15; Doc. 15, Ex. A).

resolution of its appeal.  *Id.*  According to Plaintiff, DADS informed it after this date that no appeal would be made available.  (Doc. 15).

In light of the foregoing allegations, Plaintiff and the putative class it seeks to represent assert claims against Defendants in their official capacities pursuant to 42 U.S.C. § 1983.[3]  Plaintiff claims that Defendants violated Plaintiff's federal constitutional right to due process when they "illegally terminated Plaintiff's CLASS contract and deprived Plaintiff of its [due process right] to contest the adverse action" taken against it. Plaintiff also asserts a cause of action against Defendants in their official capacities for breach of contract, claiming that Defendants materially breached the CLASS contract "by improperly terminating the contract and failing to extend appeal rights required by law." Plaintiff also requests preliminary and permanent injunctive relief enjoining Defendants from terminating Plaintiff's contract and from requiring the transfer of Plaintiff's patients, and requiring DADS to extend appeal rights to Plaintiff and a hearing on the proposed contract termination.  Finally, Plaintiff seeks corresponding declaratory relief. (Doc. 15).

**B.   Plaintiff's Motion for Temporary Restraining Order**

On May 30, 2008, the date before Plaintiff's contract was allegedly set to expire, Plaintiff filed a Motion for Temporary Restraining Order.  (Doc. 3).  In it, Plaintiff admitted that Defendants had in fact extended appeal rights to Plaintiff by issuing a "notice of hearing."  *Id.*  However, Plaintiff claimed that the availability of a hearing was now meaningless, given that Defendants had already expedited the transfer of all but two

---

[3]  Plaintiff defines the putative class as "healthcare providers participating in the CLASS program whose Constitutional right to Due Process of Law [has] been violated by Defendants who, acting under a custom or policy of [Texas Health and Human Services Commission], have illegally terminated its CLASS contract and failed to extend appeal rights required by law to contest the adverse action."  (Doc. 15).

of the 49 patients to whom Plaintiff provided CLASS services.  (Doc. 3; Doc. 3, Ex. A).

Plaintiff therefore sought temporary injunctive relief ordering Defendants to stop the

termination of Plaintiff's contract, to extend to Plaintiff a meaningful opportunity to

contest Defendants' adverse action, and to return the transferred patients.  (Doc. 3).

Plaintiff claimed that if Defendants' unauthorized actions were not remedied in this way,

"Plaintiff will be forced to shut down the essentially Medicaid-only provider, its 81

employees will lose their jobs and, most importantly, the medically fragile patients who

depend upon Plaintiff will be forced to obtain new providers against their will and in

opposition to the patients' best interest."  (Doc. 3; Doc. 3, Exs. A, B).

In response to Plaintiff's motion, Defendants submitted the affidavit of Barry

Browning, an attorney in the Enforcement Unit of DADS, Legal Services Section.  (Doc.

10; Doc. 10, Attachment 1).  Browning attests that on April 18, 2008, he was assigned to

represent DADS in Plaintiff's appeal.  *Id.*  According to Browning's affidavit and one of

the documents attached, the Texas Health and Human Services Commission ("THHSC")

notified Plaintiff's attorney in a letter dated May 22, 2008 that Browning had been

assigned to the appeal.  *Id.*  The letter requested that Plaintiff's counsel contact Browning

to schedule a hearing.  *Id.*  Defendants represented in their response that they had

"continued" Plaintiff's contract pending resolution of its appeal.  (Doc. 10).

On June 6, 2008, the Court held an emergency hearing on Plaintiff's request for a

temporary restraining order.  The Court determined, for the reasons stated on the record,

that it could not force the transferred patients to return to Plaintiff.  However, the Court

ordered Defendants to issue a letter to the DADS case managers and/or to the transferred

patients informing them of Plaintiff's continued eligibility as a CLASS provider.

Defendants provided this notice.  (Doc. 21, Ex. 2).  At a status conference on June 26, 2008, the parties informed the Court that none of the transferred patients had yet returned to Plaintiff.

Given the above, the relief requested by Plaintiff's Motion for Temporary Restraining Order either has been provided by Defendants or denied by the Court.  More specifically, Defendants have extended to Plaintiff the right to a hearing on its contract termination.   In addition, the contract remains in effect pending the resolution of Plaintiff's appeal.  Finally, the Court denied Plaintiff's request to order the return of the transferred patients, although the Court directed Defendants to inform these patients of Plaintiff's continued eligibility as a CLASS provider.  The Court must now determine the extent to which Plaintiff's Amended Complaint survives Defendants' grounds for dismissal.

## III.   Defendants' Motion to Dismiss

## A.   Standards of Review

## 1.   FED. R. CIV. P. 12(b)(1)

Rule 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)(quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*

*v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)(citing *Barrera-Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996)). A motion to dismiss for lack of subject matter jurisdiction "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n*, 143 F.3d at 1010 (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992)).

**2.      FED. R. CIV. P. 12(b)(6)**

In considering a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). While the plaintiff's complaint need not contain "detailed factual allegations, [its] obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…." *Id.* at 1964-65 (quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1265 (quotations, citations, and footnote omitted). A court generally must limit itself to the contents of the pleadings in considering a Rule 12(b)(6) motion but may consult documents attached to the defendant's motion if "'they are referred to in the plaintiff's complaint and are central to [its] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224

F.3d 496, 498-99 (5th Cir. 2000)(quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

**B.      Grounds for Dismissal**

**1.      Eleventh Amendment Immunity**

The Court first considers Defendants' request, made pursuant to Rule 12(b)(1), to dismiss Plaintiff's § 1983 and breach of contract claims on grounds of Eleventh Amendment immunity.  (Doc. 13).  It is well-settled that the Eleventh Amendment to the U.S. Constitution prohibits a plaintiff from bringing suit in federal court against a State unless the State waives its sovereign immunity by consent or Congress clearly and validly abrogates the State's immunity.  U.S. CONST. AMEND. XI; *e.g.*, *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  Texas has not waived its immunity from suit in § 1983 actions, *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998), nor does § 1983 abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 345 (1979).  In addition, Plaintiff points to no legislative provision that would indicate that Texas has expressly waived its immunity to suit on Plaintiff's breach of contract claims.  (Doc. 38); *see Martin K. Eby*, 369 F.3d at 468; *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 594 (Tex. 2001).  Finally, the Court has located no authority to suggest that Congress has abrogated the States' immunity with respect to state law breach of contract actions.  In fact, the authority suggests the opposite.  *See Pillsbury Co., Inc. v. Port of Corpus Christi Auth.*, 66 F.3d 103 (5th Cir. 1995)(dismissing breach of contract claim against political subdivision of state on grounds of Eleventh Amendment immunity); *Kitchens v. Tex. Dep't of Human Res.*, 747

F.2d 985, 986 (5th Cir. 1984)(had plaintiff's pendent state law contract claim for money damages been brought independently in federal court, "it clearly would have been barred by the Eleventh Amendment").

Here, Plaintiff asserts its § 1983 and breach of contract claims against Horn and Ford, both officials of DADS, in their official capacities. (Doc. 15).[4]  As a general rule, suits against state officials in their official capacities are treated as suits against the State itself and immunities available to such officials are those the State possesses. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).    However, the Supreme Court has long recognized that "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."  *Frew v. Hawkins*, 540 U.S. 431, 437 (U.S. 2004)(citing *Ex parte Young*, 209 U.S. 123 (1908)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)(such suits may be maintained because "a suit challenging the constitutionality of a state official's action is not one against the State").  In other words, "[o]nly for the purposes of the Eleventh Amendment are 'official-capacity actions for prospective relief…not treated as actions against the State.'"  *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004)(quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).  A court may not, however, "award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity."  *Frew*, 540 U.S. at 437 (citing *Edelman v. Jordan,* 415 U.S. 651, 668 (1974)).  In addition, the Texas Supreme Court has directed that suits seeking declaratory or injunctive relief to enforce

---

[4]   A State's Eleventh Amendment immunity extends to any state agency or entity deemed an "alter ego" or "arm" of the State.  *Perez*, 307 F.3d at 326 (citing *Vogt v. Bd. of Comm'rs*, 294 F.3d 684, 688-89 (5th Cir. 2002)); *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997)(plaintiff cannot avoid sovereign immunity bar by suing state agency or arm of State rather than State itself).  There is no dispute that DADS is a state agency.  (Docs. 13, 15, 30, 38).

contractual rights are suits against the State that cannot be maintained without legislative permission.  *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *W.D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 840-42 (Tex. 1958); *Herring v. Houston Nat'l Exch. Bank*, 253 S.W. 813, 814 (1923).   Given the above, the Court concludes that the Eleventh Amendment deprives it of subject matter jurisdiction to consider all but Plaintiff's § 1983 claims for prospective relief against Defendants in their official capacities.   The Court will now consider whether these claims survive Defendants' additional asserted grounds for dismissal.

## 2.      Property Interest

Finding it dispositive, the Court next considers Defendants' argument, based either on lack of standing or failure to state a claim, that Plaintiff's § 1983 claims for prospective relief are subject to dismissal for failure to identify the existence of a constitutionally protected property interest.  (Docs. 13, 30).[5]  To bring a due process claim under § 1983, a plaintiff must first identify the protected life, liberty, or property interest at issue and then show that governmental action resulted in a deprivation of that interest.  *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001); *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995); *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir. 1983).  Here, Plaintiff's amended pleading complains of the deprivation of a property interest.  (Doc. 15).  More specifically, Plaintiff alleges that it has "a right to continue its business" and "receive payments under CLASS for the services [it]

---

[5]  If a plaintiff lacks standing to sue under Article III, § 2 of the U.S. Constitution, then a federal court lacks jurisdiction to hear the complaint. *Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004)(citing *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 386 (5th Cir. 2003)).  In order to demonstrate Article III standing, a plaintiff must initially show that he has suffered an injury in fact—that is, the invasion of a legally protected interest.  *E.g.*, *Texas v. U.S.*, 497 F.3d 491, 496 (5th Cir. 2007)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

deliver[s]."  *Id.*  In order to have a property interest within the ambit of the Fourteenth Amendment to the U.S. Constitution, a plaintiff must have more than an abstract need or desire for it and more than a unilateral expectation of it—that is, he must have a legitimate claim of entitlement to it.  *Blackburn*, 42 F.3d at 936 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "Property interests are not created by the Constitution. Rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings."  *Id.* at 936-37 (citing *Perry v. Sinderman*, 408 U.S. 593, 599-601 (1972)).  "The hallmark of [a property interest]…is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982).

In their Motion to Dismiss, Defendants point to the following provision in Plaintiff's CLASS contract attached as an exhibit to Plaintiff's Amended Complaint:

> The Department and the Provider Agency mutually agree:
>
> …That this contract shall continue subject to the availability of appropriated funds or until the federal and/or state governments cease to participate in the program, or by mutual consent of the Department of the Provider Agency, *or if not by such mutual consent, either party to this contract may cancel any or all programs covered by this contract by the giving of sixty (60) days notice in writing to the other party and this contract for the applicable program(s) shall thereupon be canceled upon the expiration of such sixty (60) day period.*

(Doc. 15, Ex. A at § IV.B.)(emphasis added).

Defendants liken the above provision to the "at will" employment relationship in Texas, which courts have consistently found insufficient to create a property interest.  *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426 (5th Cir. 2001)(citing, *e.g.*, *Loftis v. Town of Highland Park*, 893 S.W.2d 154, 155 (Tex.App.-Eastland 1995, no writ)).  The Fifth Circuit has explained that an employee's legitimate claim of entitlement to a job consists of "a claim

which would limit the employer's ability to terminate the employment." *Johnson v. Sw. Miss. Reg'l Med. Ctr.*, 878 F.2d 856, 858 (5th Cir. 1989).  Therefore, an employee whose job can be terminated "at will," *i.e.*, "for good cause, bad cause, or no cause at all," does not have a constitutionally protected property interest in his continued employment.  *See id.*; *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 2002); *see also Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997)(citing *Roth*, 408 U.S. at 578; *Perry*, 408 U.S. at 602-03)(public employees who can be discharged *only* for cause have property interest in continued employment).

Defendants argue that because either party could terminate the CLASS contract without cause, Plaintiff has no property interest in the continuance of the contract.  (Doc. 13).  The Court notes that the Texas Administrative Code also authorizes DADS to "terminate the provider agency's contract without cause by giving the provider agency written notice, as stated in the contract, of the impending termination," 40 TEX. ADMIN. CODE § 49.62 (2008)(effective Feb. 5, 2004), although another code provision states that DADS may impose the sanction of "involuntary contract termination" where a provider agency fails to follow the terms of the contract and/or fails to comply with program rules, policies, and procedures, 40 TEX. ADMIN. CODE § 49.61(a), (b)(3)(2008)(effective Feb. 5, 2004).  DADS appears to have complied with both of these provisions by giving the required 60 days' written notice and informing Plaintiff that its contract was being terminated because its proposal did not meet the qualifying score required by DADS.  That DADS gave a reason for the termination, however, does not create a property interest in the continuance of the contract.  As explained *supra*, the law is clear that a legitimate claim of entitlement is one that cannot be taken away *except* "for cause."

Plaintiff's contract and § 49.62 of the Texas Administrative Code give DADS the authority to terminate Plaintiff's contract upon giving 60 days' written notice of termination, without more.

As noted in Plaintiff's pleading, its CLASS contract also states that "[t]he Department agrees…[t]o provide a fair hearing as defined in the Department's regulations, to the Provider Agency in the event the Department…suspends or cancels the Provider Agency's contract."  (Doc. 15; Doc. 15, Ex. A at § III.E.).  Plaintiff's pleading also points to § 8340 of the CLASS Provider Manual, which states that the provider agency has the right to appeal the termination of its contract by filing a written request for a hearing within 15 days of its receipt of the termination notice.  (Doc. 15; Doc. 15, Ex. E).  However, the Court notes that even where a provider agency appeals the termination of its contract, the Texas Administrative Code and the CLASS Provider Manual grant DADS the authority to transfer a provider agency's patients pending appeal.  More specifically, the Texas Administrative Code provides as follows:

> (d) An appeal does not delay any adverse action except contract termination.  *If the provider agency appeals the termination of a contract, DHS reinstates the provider agency's contract.  However, DHS may continue to transfer the provider agency's clients*.  In addition, DHS may place a vendor hold on the contract under appeal, and DHS does not refer any new clients to the provider agency while the appeal is pending.  If the provider agency prevails on appeal, DHS allows:
> (1)     the provider agency's contract to remain in effect;
> (2)     client referrals to resume; and
> (3)     the provider agency's former clients an opportunity to return to the provider agency.
>
> (e)     If DHS prevails on the appeal, the original date of termination is re-imposed.

40 TEX. ADMIN. CODE § 49.61(d)-(e)(2008)(effective Feb. 5, 2004)(emphasis added).  In addition, § 8340 of the CLASS Provider Manual provides that "[w]hen a contract is

involuntarily terminated…, *clients may be transferred to another provider, even if appealed.  If appealed, DHS can give clients a choice of returning to the provider agency.*"  (Doc. 15, Ex. E)(emphasis added).

In sum, the Court finds that Plaintiff does not have a constitutionally protected property interest in the continuance of its contract or in the retention of its clients pending appeal.  Plaintiff's CLASS contract and the Texas Administrative Code give Defendants the authority to terminate the contract without cause.   In addition, the Texas Administrative Code and CLASS Provider Manual prevent Plaintiff from claiming any entitlement to retaining its patients upon notice of termination.  Therefore, Plaintiff's § 1983 claims for prospective relief against Defendants in their official capacities must be dismissed.

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **ORDERS** that the Motion to Dismiss filed by Defendants in their official capacities is hereby **GRANTED**.  (Doc. 13).  Only Plaintiff's claims against Defendants in their individual capacities remain.

Also for the reasons stated above, the Court notes that Plaintiff's Motion for Temporary Restraining Order has been resolved and is therefore moot.  (Doc. 3).

SO ORDERED this 18th day of November, 2008, at McAllen, Texas.

Randy Crane
United States District Judge